The case today is in the matter of the Estate of David Davis V, case number 4100366 for the appellant, Mercer Turner, for the appellee, Susan Perkins. Mr. Turner. Okay, please report. Counsel, it's our pleasure to be here today, this afternoon on this really winter day here in central Illinois. A little cold out, but with the snow on the ground and the sun as bright as it is, it's a delightful trip here from McLean County. I'd like to mention the facts of this case, and of course, please answer any questions that you might have about it. The pertinent facts are contained in one sentence. It's the first article of the will, and there are some directions there, to the executor. The issue has to do, of course, with whether or not equitable apportionment applies, and it is the intention of my clients that equitable apportionment clearly should apply in this case. It's an automatic doctrine. It applies in every estate, if it actually is relevant, and it would only be barred if it is specifically and clearly barred by the intention of the testator expressed in clear language in the will. We suggest a couple of things about the facts, the pertinent facts, the sentence. It's perfunctory in nature, and you know, it's kind of a form. It could be, quite frankly, language that has developed in the long line of Davis lawyers down the years. There's certainly no evidence in the case about that, because those gentlemen aren't around here to tell us about that, but using the phrase, passing through hand, or its hand, you know, it's probably a form, because, you know, the appointed executor is the testator's sister, and you know, he wouldn't be calling his sister an it's, and I would suggest it's perfunctory in nature, and really had nothing to do with specifically applying to equitable apportionment would automatically apply in this case. Part of the pertinent facts would be the passing through its hand phrase, and you know, I think common sense says that anything that passes through the hands of the executor would be pertinent, and the collection of taxes outside of the hands isn't some literal expression, you know, where something actually is in the hands of a person, and that person does something with it. You know, it's a figurative way of speaking, and you know, executors don't necessarily have things in their possession when they settle estates. They can get things you know, controlling, or directing, you know, having something to do with an asset. It doesn't have to do with ownership of an asset, or certainly isn't limited to probate assets per se, what would be inventoried in the estate. And so a common sense review of that sentence would indicate that it doesn't bar equitable apportionment. Another way to look at it, which is favorable to my clients, is taking a strict grammar approach to it. Passing from the assets passing through its hands is a prepositional phrase, and it would be used to define the last antecedent, the antecedent that's closest to it, and that would be that sentence if you were an English teacher, maybe, or maybe a judge whose obligation it is to... Why wouldn't it be assets instead of taxes? From is the preposition, and the object of the preposition is assets. The object of from is assets, and it's used to define a noun or pronoun. A preposition never defines a verb. So it doesn't define the word pay, it has to define some noun there in that sentence. And the law, you know, the case law says that you go to the last antecedent, and the last antecedent would be the word taxes. And so it can, from a grammatical point of view, this sentence can be read clearly, you know, to say, you know, it's unambiguous from a preposition from assets passing through its hands is defining taxes, and it means that the executor is being told that if there are assets that pass through your hands that have generated estate taxes and federal estate taxes, Illinois taxes, that you are to pay those taxes. It has, in that sense, it would have nothing to do with limiting the executor's ability to utilize the Doctrine of Equitable Act, this claim that was filed in this case. You know, if the court is going to say that this sentence says you can only take probate assets to pay bills, then it was improper to have the insurance company pay that claim that was filed in the estate. That was clearly an asset that was not, that insurance policy was not a probate asset. And, you know, the reason that makes good sense. An executor has an obligation, fiduciary obligation, to do what's in the best interest of the estate, and to put the estate first, and, you know, to take reasonable efforts to collect assets, to minimize bills, you know, if there is a claim filed, to contest the claim or whatever, but the efforts of the executor are to try to maximize what's available for the beneficiaries in a legal and reasonable sense. You know, we're not asking about going to, you know, some extreme here. We're talking about mainstream law, right down the middle, established by the Illinois Supreme Court, as to what an executor is supposed to do. We believe it would be responsible, and really the only thing for the executor in this case, to exercise the rights that exist under equitable apportionment. For these beneficiaries, we're talking about several hundred thousand dollars. For the law in general, you know, it's awfully important, because there are a number of ways that assets now get transferred outside of a will. And when there's a will connected with other vehicles to transfer assets, it's important, I think, for the law, you know, to be applied the way the Supreme Court has indicated, which is that equitable apportionment is automatic, unless clearly you intend to transfer assets outside of a will. The intention of the executor is to have it done another way. At the federal level, you know, estate taxes are now kind of pertinent. There's a conference that occurred a couple days ago with the President and some leaders in Congress talking about tax reform, and it includes some comments and some discussions, some plans for estate taxes. But, you know, estate taxes are an important part of a state settlement, and maybe an even more important part, if they don't get together out there, on increasing the exemption. It's going to apply to a lot more people. And, you know, regardless of whether we're talking about something that applies only to larger states or not, I think it's important to uniformly apply the law. And in this case, I think it's clear that it should be applied in this case. At the trial level, at the lower level, the court relied on the Maley case. In that case, that was clear that that language was written specifically for that will, and the word taxes was used a number of times. If you read it, it was like a simple sentence like the sentence in the Henson case, but the word taxes was used a number of times. It was clear that somebody was trying to direct the executor what to do about taxes. In this case, we think that this sentence is really part of the form and the way that many begin wills, many testators begin their will, and we think that the passing through his hands part may actually be a part of history and may be a part of history. It may have actually been created, that type of language may have been created before federal state taxes. It may have actually come from the first Judge Davis. And again, you know, that would only arise through... Mr. Turner, let me ask you this. When the decedent failed to exercise his general power of appointment, does that mean that the property subject to the power of appointment remains in the trust? Yes, it does. And I'd also like to point out relative to that, that unfortunately here in this case, you know, the decedent was 55. So he was younger than I am at the time of his death, and I suspect he thought he had a number of years to be taking that money out of that trust and unfortunately didn't. And I think his age has something to do with... I guess I understand that, but the property subject to the power of appointment stays in the trust without the executor doing anything or the executrix. Therefore, how does it pass through his hand? Oh, by exercising... I'm awful glad you asked that question. I think it's the explanation that's real important. By exercising the power of apportionment, she sends a bill, the executrix sends a bill to Commerce Bank and says, because assets in your trust created a federal state and Illinois inheritance tax here, we're giving you a bill for $380,000 that we'd like you to pay. Which is approved by the law of Illinois through the Illinois Supreme Court. That money then goes into the hands, literally the hands of the executor, into the executor's checking account. And if it would have been done at the time those taxes were due, would have then been, you know, the check would have then gotten deposited into the executor's checking account, the executor would have written a check to the Internal Revenue Service and the Illinois Department of Revenue to pay those taxes. Now that's already occurred. The reason we're here is we're saying that should have happened, it didn't happen, that it should have happened to begin with. And so it's still not too late to exercise it. The estate is still open. But that $380,000 would have passed, you know, again it's a figurative way of saying it, but it would clearly have passed through the executor's checking account. And there's no other way to get it done, I don't think. Well, if I were to say in your argument the only way that's going to happen is if we order it. Otherwise there is no passing through the executor. Because the will does not specifically bar its application, and it has to bar it. It's not a discretionary matter for the executrix to decide, am I going to do it or am I not? It's automatic, it's mandatory. And so the mandatory part comes from prior law established, case law established by the Supreme Court. So you're not doing the mandating of the action, what you're doing, if you happen to agree with the appellants, would be to say the law in this case is that equitable apportionment applies because the will doesn't prevent it. As I understand it, your clients are beneficiaries under the trust where the property subject to the power of appointment remains. Yes, they have a beneficial interest together with other members of the family. And the pertinence of that whole thing is that the way the trustee is construing that trust is that the payment of taxes, estate taxes, by that trust would be shared by all the beneficiaries, not just by three clients. And so in that event, the executor of this estate would also have her share of that trust taxed for this equitable apportionment cost. And that's probably the reason it didn't happen. Is that a conflict? Yes, it is a conflict. Now, we're not making this appeal on the basis of conflict of interest. She's an aunt, this is a family, and we want to approach this in a business-like fashion so this executor or Commerce Bank itself or any other executor The executor benefits by having the probated estate pay the taxes and not getting any lessons from the trust. That is true. But let me re-say it this way, if I could, Your Honor. We're not here saying that equitable apportionment applies because the executrix has a conflict of interest. We're here saying that equitable apportionment applies because the Supreme Court has said earlier in case law that it does apply, regardless of whether the executor has a conflict of interest or not. The suggestion, the comment that there may be a conflict of interest only helps explain why did things happen the way they did. It's not the basis for our claim at all. I understand. I'd be pleased to answer any questions and thank the Court for its time. Of course, we reserve some time for rebuttal. You will have rebuttal. Thank you, Mr. Turner. Ms. Perkins. May it please the Court. My name is Lynn Perkins, Susan Lynn Perkins, and I represent the executrix of this estate, Elizabeth Cager. My argument is going to be very brief because I certainly don't want to belabor what is really a very simple issue. I fear that I'll just begin repeating the same argument over and over again. We start with the premise of the executor has the absolute obligation to carry out the intention of the testator. The testator in this particular case, it's very clearly expressed, and I know counsel thinks it's some sort of historical artifact or something, the language that was used in the will, but it's very, very clear the issue was solved very efficiently by the language that was used. All my estate taxes will be paid by my executor from the assets passing through its hands. What else can that mean than the taxes shall be paid from the assets of the estate? This is the position that was developed some years ago, not long after Mr. Davis died. At the time that the issue arose, she obtained a legal opinion from the trust, the executrix, and she obtained a legal opinion from the attorney that was representing her at the time, and both were of the solid conclusion that based on the language of this will, equitable apportionment does not apply. Now, the case that comes closest to this particular issue is the Mallet case, and I think that is an interesting case because the language in that will simply says, I direct my executor to pay my taxes from my estate. The other cases that we've found along the way contain additional language, and my estate shall not require reimbursement for anyone, I waive reimbursement for anyone. So, the Mallet case simply says, pay the taxes from my estate. And the court said that we believe the word estate used in the will without a modifier means the assets passing under the will, and it should not be broadened to include assets not passing under the will. That's exactly the situation we have here. It's a very, very simple issue, it's simple language, it might be historically curious to Mr. Turner, but those were the words that were actually used by the testator. This court's obligation, and it's the executor's obligation as well, is to give effect to the intention of the testator. He directed, he wanted his estate taxes to be paid from the assets of the estate. To me, like the language in Mallet said, the taxes shall be paid by my estate, as opposed to from my estate. I think it's the same thing. The only assets that an executor has any control over are the assets that belong in the estate. The only assets in the estate are probate estate, or probate assets. Right, but Mr. Turner's arguing that the word from modifies the taxes, so taxes from the assets. Now, the executor says, I want all of my debts to be paid from, and then he goes on to name the source. And the source is his estate, the assets that the executor actually has some control over. So, we are asking that this court, as the trial court did, uphold the intention of the testator, and that was to pay the taxes from the assets of the estate. And we ask that the trial court's decision be affirmed. Thank you. Thank you. Rebuttal, please. Again, may it please the court and counsel, it's our position that Mallet is not at all similar. A more similar case is the Fender case that arises out of the First District. Every now and then the First District can author a really good opinion that the rest of the state needs to pay attention to. And in that case, there's the bundle of obligations, the bundle of bills that need to be paid. In Fender, it refers to taxes and debts and all that stuff, administration costs, just like it does in the Ensign case. In these other cases, especially Malik, the language specifically is referenced to taxes. And I believe it can clearly be read to apply to taxes. And in this case, we don't think that the first article of the will had anything at all to do with equitable enforcement or barring it. And I think we've explained clearly that common sense tells you that a $380,000 check from the trust goes through the hands of the executive. And if there is this mandate in Article I of the will, why is there an insurance company paying a legal malpractice claim? If this intention is so clear, it seems to me that it should have dipped into the residual and paid that legal malpractice claim and told the insurance company the testator wanted to protect the insurance company, make sure insurance companies didn't pay claims. I just simply think we have to be consistent in the way things are done. And I think our interpretation is the logical one, is the common sense one, is what would be consistent with how the Supreme Court of Illinois has ruled in the past and consistent with what this will provide. Thank you very much. We'd be pleased to answer any questions. Thank you, everybody, for your time. Thank counsel, too.